Aaron King, Appellee, v. Chicago Junction Railway Company, Appellant, and Chicago Great Western Railway Company.

## Gen. No. 15,156.

**VERDICTS**—*when set aside.* A verdict will be set aside on review as against the evidence where clearly and manifestly against the weight thereof.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed June 16, 1910.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN D. BLACK and JOHN C. SLADE, of counsel.

CASSODAY & BUTLER, for appellee; ELDON J. CASSODAY and RUSH C. BUTLER, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action on the case for personal injuries, brought against two railway companies, the jury found the defendant, the Chicago Junction Railway Company, guilty, and assessed plaintiff's damages at $2,500, and found the other defendant not guilty. The court entered judgment on the verdict, and the Chicago Junction Railway Company appealed.

Seven tracks of the appellant cross Exchange avenue, an east and west street in the Union Stock Yards, at grade. Plaintiff was in the service of a company at said yards and was injured by a train of the other defendant going north across Exchange avenue on either the east track, or the track next to the east track of appellant. The accident occurred a few minutes before 6 P. M., October 27, 1904, half an hour or longer after sunset. A large number of men who had just quit work for the day were going east in Exchange avenue over the tracks on their way home, and other men were going

west over said tracks on their way to work. The roadway of
the avenue was planked and was used as well as the side-
walks by persons passing over the tracks on foot.

The allegations of negligence necessary to consider are the
allegations that no headlight was burning on the engine; that
no bell was ringing; that there was no flagman on the cross-
ing, and that there was no light over the crossing.

Plaintiff testified in chief that he came on the crossing
from the west, walking in the middle of the street; that south
of the avenue cars were standing on the first, second and
third tracks from the west; that after he crossed the tracks
on which the cars were, he looked to the south to see if the
tracks were clear; that it was dark and he could not see far
and, "did not see anything only people all around me;" that
he was able to go to the north, "to kind of pick my way
around north, and there was a great bluster, or something,
hollering;" that he caught a glimpse of a horse and buggy,
tried to get out of the way, was knocked down and knew noth-
ing more until he found himself on the track with an injured
leg.

On cross-examination he testified that he had worked in
the stock yards ten years, passed over said tracks every day
and knew that a great deal of switching was done at said
crossing. Asked if he saw the engine, he answered, "I saw, I
think it must have been, a train from the way everybody was
pushing around and hollering." He further testified that he
never saw an electric light over the crossing, never saw a
flagman on the crossing before he was hurt; that on the night
in question he was not watching for a flagman because he
never saw one there, and that he saw no headlight on the
engine. He further testified that he would not say that he
looked south after crossing the third track; that a great lot
of people there seemed to be jammed up—knotted. "Q.
What were they saying? A. It seems to me an engine was
approaching there and it got right in amidst the people some
way or other. Q. What were they saying then? A. Call-
ing look out or something of the kind, the people running
around."

The engine which struck plaintiff was running with the tender in front at the north end of a long train, and it was intended to go only far enough to clear a switch at the south end of the train.  Steam had been cut off and the engine was "drifting," going not faster than three miles per hour, and the engineer was keeping a lookout in front and also to the rear for a signal to stop, and had his hand on the "air." Men were passing over the track in front of the engine, some going east and some west.  Just then one Vehon, who was driving a single horse and buggy west, in order to cross in front of the engine, struck his horse with a whip and the horse dashed across the track.  As he crossed the track he shied to the north, struck plaintiff and knocked him down, with his body on the west rail of the track on which the engine was approaching.  A policeman who stood east of the east track ran to plaintiff and attempted to pull him off from the track, but was unable to do so before the engine ran over one of his legs and so crushed it that amputation was necessary.

The plaintiff called four witnesses, Doherty, Rainey, Martin and Walker, each of whom testified that he was one of the men going east over the crossing and that he saw no headlight on the tender, no light over the crossing, no flagman, and heard no bell.

Opposed to this testimony was the testimony of Trainor, the engineer, who testified that the bell was ringing, the headlight on the tender and the arc light over the crossing burning, and that he saw Kelly, the flagman, immediately after the accident; of Harty, the fireman, who testified that he lit the headlight on the tender and could see that it was burning by the reflection, that it was burning immediately after the accident, that he rang the bell from the time the train started and was ringing it at the time of the accident, that the arc light was burning; of Vehon, the driver of the horse and buggy, that as he came up the crossing he saw the engine, that the headlight was burning, the bell ringing, the arc light burning, that the flagman was on the crossing and motioned to the witness with his lantern to stop; of Hanley,

who was in the buggy with Vehon, that he heard the bell ringing before he saw the train, that the arc light and head-light were burning; of Kelly, who testified that he had been a flagman on the crossing for three years, on duty from seven in the morning until six in the evening, that he was on the west main track as the train approached, that the light on the tender and the arc light were burning and the bell ring-ing, that as the train came on the crossing the men began to run to get across ahead of the train, that he swung his lantern and called to them to look out for themselves; of Walters, a city police officer, who testified that he was on the north side of the avenue just east of the tracks, saw the flagman standing in the center of the crossing, saw the arc light burning and saw the train approaching with the head-light burning, and when plaintiff was knocked down he ran to him to pull him off from the track; of Riley, a watchman, who testified that he was in Exchange avenue east of the tracks, that he saw the train as it came on the crossing, saw that the headlight and arc light were burning, and that Kelly, the flagman, was on the crossing; of Farrell, who testified that he was a watchman, was with Riley, saw a man driving west and called to him to look out, that he heard the bell ring as the man passed by, that the headlight and arc light were burning, and that he assisted in taking plaintiff out from under the wheel of the tender; of Mangan, who testified that he was going over the crossing, that he saw the flagman on the crossing with a lantern in his hand, that he saw the train when it was the length of an eight room house south of the crossing, that he saw the headlight and heard the bell, and that the arc light was burning; of McCormick who testified that he was a telegraph operator going to work, and was on the footboard of the engine, that the bell was ringing, the headlight and arc light burning, and the flag-man on the crossing with a lantern; of Deegan, a switchman, who testified that he was on the top of the fourth car from the engine; that the arc light was burning, that the train suddenly stopped, and he immediately went to the front end of the engine, and that the headlight was then burning.

To entitle the plaintiff to a verdict, the burden was on him to show by a preponderance of the evidence that the defendant was guilty of the negligence alleged in some count of the declaration, and that the plaintiff was in the exercise of reasonable care for his own safety. The testimony of defendant and his witnesses is negative; that they did not see the arc light, the headlight, the watchman, or hear the bell. Opposed to this is the positive testimony of a large number of witnesses that the arc light and headlight were burning, the arc light, the headlight, the watchman, or hear the bell. evidence is clear that there was an arc light over the crossing, a headlight, a bell on the engine and a watchman, whose duty it was to be on the crossing. It is improbable that at the same time, neither the arc light nor the headlight should be burning, the flagman not in his proper place and the bell not ringing. It is improbable that the engineer and fireman would endanger their own safety by running an engine on a dark night without a headlight burning.

On the question whether appellant was negligent, the question is whether from all of the evidence the jury might properly find that the appellant was guilty of any one of the negligent acts alleged in the declaration. But it is difficult to see how the jury could properly find that the plaintiff was in the exercise of reasonable care for his own safety unless they found that the bell on the tender was not ringing, that neither the arc light nor headlight was burning, and that the watchman was not on the crossing giving warning of the approach of the engine.

A careful examination of the evidence has led us to the conclusion that the verdict is so manifestly against the evidence that the court erred in denying the motion of the appellant for a new trial, and for that error the judgment will be reversed and the cause remanded.

*Reversed and remanded.*